UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **KERRY LEE JORDAN** | \* | **CIVIL ACTION NO. 10-1899** |
| **VERSUS** | \* | **JUDGE DONALD E. WALTER** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | \* | **MAG. JUDGE KAREN L. HAYES** |

### REPORT & RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

### Background & Procedural History

Kerry Lee Jordan protectively filed the instant application for Title II Disability Insurance Benefits on March 25, 2009. *See* Tr. 16, 116-117.[1] He alleged disability as of March 17, 2009, because of bulging discs in his back and neck area, and a cracked bone in his left shoulder. (Tr. 126, 140). The claim was denied at the initial stages of the administrative process. (Tr. 57-58, 65-72). Thereafter, Jordan requested and received a September 24, 2009, hearing before an Administrative Law Judge ("ALJ"). (Tr. 26-45 ). However, in a February 18, 2010, written

---

[1] Jordan filed a prior application on November 7, 2007, which was denied by an Administrative Law Judge on March 19, 2009. (Tr. 47-56). He unsuccessfully appealed the ALJ's decision to the Appeals Council. *See* Tr. 59-61. However, there is no indication that he sought further review in district court.

decision, the ALJ determined that Jordan was not disabled under the Social Security Act, finding at step five of the sequential evaluation process that he was able to make an adjustment to other work that exists in substantial numbers in the national economy. (Tr. 13-22). Jordan appealed the adverse decision to the Appeals Council. On October 26, 2010, however, the Appeals Council denied Jordan's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).[2]

Meanwhile, on August 25, 2010, Jordan filed a subsequent application for Supplemental Security Income benefits that was approved by the Commissioner. *See* Pl. Brief, pg. 2.[3] Consequently, the relevant period at issue here, at least for purposes of establishing disability, extends from March 20, 2009, – the day after the ALJ's denial of Jordan's prior application -- through February 18, 2010, the date of the ALJ's decision on the instant application.

On December 27, 2010, Jordan sought review before this court. He alleges the following errors:

> (1) the ALJ's summary finding at step three of the sequential evaluation process is not supported by substantial evidence;
>
> (2) the ALJ's conclusory finding on credibility is not supported by substantial evidence;
>
> (3) the Appeals Council erred by failing to properly consider, or otherwise remand the matter for consideration of, newly submitted evidence; and
>
> (4) the ALJ's step five determination is not supported by substantial evidence.

---

[2] The Commissioner set aside an earlier, September 9, 2010, decision, so it could consider new evidence submitted by plaintiff's counsel. *See* Tr. 1, 6-8, 166-167.

[3] It is not clear why Jordan did not also file another claim for disability insurance benefits, as he remained insured through December 31, 2010. *See* Tr. 126.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a

broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any

point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

I.  **Steps One and Two**

The ALJ determined at step one of the sequential evaluation process that Jordan did not engage in substantial gainful activity during the relevant period. (Tr. 18). At step two, he found that he suffers severe impairments of cervical and lumbar degenerative arthritis, plus neck and back pain. *Id*.

II. **Step Three**

At this step, the ALJ concluded that plaintiff's impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. (Tr. 19). Plaintiff contends that the ALJ's determination is not supported by substantial evidence.

In *Audler v. Astrue*, the Fifth Circuit recognized that the ALJ is required to discuss the evidence and explain the basis for his findings at each unfavorable step of the sequential evaluation process. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (citing 42 U.S.C. § 405(b)(1)). As here, an ALJ's bare conclusion that the claimant's impairments do not meet or equal a listing does not provide a basis for judicial review to assess whether the finding is supported by substantial evidence. *Id*. Nevertheless, an ALJ's failure to adequately explain his step three determination does not require remand unless it affects the claimant's "substantial rights." *Id*.[4] A claimant's substantial rights are affected at step three when he demonstrates that

---

[4] *I.e.*, the error may be harmless. *Audler, supra* (citing *Morris v. Bowen*, 864 F.2d 333, 334 (5th Cir. 2007)).

he meets, or at least appears to meet, the requirements for a listing. *See Audler, supra*.

To establish that a claimant's injuries meet or medically equal a listing, the claimant must provide medical findings that support all of the criteria for a listed impairment (or most similarly listed impairment). *See Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). In determining whether a claimant's impairment(s) equals a listing, all evidence in the case record about the claimant's impairments and their effects are considered. 20 C.F.R. § 404.1526(c). An impairment that manifests only some of the requisite criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891 (1990). If the plaintiff fails to demonstrate the specified medical criteria, the court will find that substantial evidence supports the ALJ's finding that listings-level impairments are not present. *Selders*, 914 F.2d at 620.

Plaintiff contends that his impairments meet the listing for disorders of the spine. The relevant section provides:

> 1.04. Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> > A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); . . .

20 C.F.R. Subpart P, App. 1, Section 1.04A.

Plaintiff further argues that the record contains evidence to support each of the paragraph "A" criteria for listing 1.04. In support of his argument, plaintiff cites to the two consultative physical examinations, records from LSU, a September 3, 2010, medical source statement from Cesar Gonzales, M.D., and his own complaints of pain. The court summarizes the medical

evidence, as follows,

On December 12, 2007, plaintiff underwent a consultative examination administered by orthopedic surgeon, Clinton McAlister, M.D., pursuant to a prior application for disability benefits. (Tr. 169-175). At the time of the examination, Jordan's chief complaint was neck and back pain. *Id*. Jordan reported significant problems with his neck since 2005. *Id*. He stated that he had undergone injections for neck pain as recently as January 2007. *Id*. Jordan also explained that he had a history of left shoulder bone splinter which was "better." *Id*. He stated that his pain was a 7 on a 10 point scale. *Id*. There was no radiation to his shoulders or arms, but he had some difficulty turning his neck. *Id*. His left hand and wrist did not give him any difficulty, but he did experience some left shoulder soreness. *Id*. Jordan related that his normal daily activity was to run errands and shop, and sometimes visit friends. *Id*. Although he walked with a slight limp on the right side, and used a cane, he was able to walk without the assistive device. *Id*. He was capable of toe walking, heel walking, and tandem walking. *Id*. He exhibited full range of motion of the shoulders, elbows and wrists with 5/5 strength and good stability, although there was tenderness and soreness over the left scapula. *Id*. He was capable of fine manipulation, opposition, gripping, and grasping. *Id*. He had 5/5 grip strength. *Id*. The upper extremity sensory exam revealed no sensory deficit. *Id*. Reflexes were active and equal. *Id*. He was able to forward flex at the waist to 40 degrees. *Id*. Straight leg raise produced bilateral pain at 45 degrees. *Id*. There was full range of motion in the hips, knees, and ankles with 5/5 strength and good stability. *Id*. There were no sensory deficits in the lower extremities, and reflexes were active and equal. *Id*.

McAlister diagnosed cervical degenerative arthritis C-5, C-6 and degenerative arthritis of the lumbosacral spine L5-S1, L4-5, with slight retrolisthesis at L4-5. *Id*. There was no evidence

7

of radicular findings. *Id*. McAlister opined that Jordan could perform work at a restricted light duty, with no lifting over 20 pounds occasionally and 10 pounds frequently. *Id*. He should avoid prolonged standing, walking or sitting, with frequent allowances to change position. *Id*. Prognosis was poor. *Id*.

On August 4, 2008, Jordan went to the emergency room because of his back pain. (Tr. 176-177). Treatment notes indicate that he was trying to obtain disability, and that his lawyer had told him to go to the emergency room for evaluation. *Id*. He stated that he had not been seen by a physician since 2005. *Id*. He used other people's medication for his pain. *Id*. He denied numbness or tingling in the extremities. *Id*. He denied radiculopathy, muscle weakness, numbness, and radiation. *Id*. He had no problems walking. *Id*. Straight leg raise was 80 degrees bilaterally. *Id*. He exhibited a full range of motion, with sensory intact. *Id*. He ambulated easily, with a normal gait. *Id*. He had 5/5 strength in all extremities, with no weakness. *Id*. He was diagnosed with chronic neck/back pain. *Id*.

On May 9, 2009, Jordan underwent a consultative examination administered by Bruce Torrance, M.D., at the request of disability determination services. (Tr. 178-182). At that time, Jordan complained of constant pain in his neck that radiated to his bilateral lower extremities, with occasional upper extremity weakness and loss of strength in his left hand. *Id*. He denied any symptoms in his right hand, except for pain. *Id*. He reported that his pain was 7-8 on a 10 point scale, on a daily basis. *Id*. He reported frequent numbness to his right lower extremity, but denied any weakness. *Id*. He also reported that his back pain worsened with standing, lifting, and ambulating for any length of time. *Id*. He denied any problems with his left shoulder. *Id*. He previously underwent pain injections with good relief to both cervical and lumbar spine, but he no longer had the ability to pay for them. *Id*. He stated that he could stand for 20 minutes at a

time, for a total of two to four hours in an eight hour workday. *Id*. He could walk 100 yards, sit for 30 minutes, and lift five pounds. *Id*. He ambulated normally, and was able to mount/dismount the table and sit/arise from the chair, without difficulty. *Id*. He exhibited tenderness to palpation to the cervical spine and upper thoracic spine. *Id*. Nonetheless, his gait was normal, and he did not require an assistive device for ambulation. *Id*. His grip strength was 5/5 bilaterally. *Id*. He also was able to perform fine and gross manipulative skills, without difficulty. *Id*. His hands showed no evidence of muscular atrophy. *Id*. He exhibited a normal range of motion in all extremities. *Id*. He had a decreased range of motion to the cervical and lumbar spine, with only 30 degrees forward flexion. *Id*. He also had a positive straight leg test, bilaterally, at 40 degrees, and was unable to walk on his heels, squat, or heel-to-toe secondary to pain, despite urging. *Id*. Motor examination showed 5/5 strength in the upper and lower extremities, bilaterally. *Id*. There was no noted evidence of atrophy or any sensory deficits. *Id*. He had 1+ Deep Tendon Reflexes ("DTRs") in the upper and lower extremities, bilaterally. *Id*. X-rays of the cervical spine showed good vertebral alignment, with no evidence of any dislocations or fractures. *Id*. X-rays of the lumbosacral spine showed good vertebral alignment, with no evidence of any fractures, but with hardware discrepancies. *Id*.

  Torrance diagnosed low back pain, and advised Jordan to follow up with an orthopedic surgeon or neurosurgeon for further evaluation and treatment. *Id*. Torrance concluded that Jordan exhibited some slight decreased range of motion, but with no sensory deficits, strength loss or weakness in the bilateral lower extremities. *Id*. Torrance also diagnosed cervical pain, but with 5/5 strength of the upper extremities bilaterally, with no evidence of any sensory loss despite complaints that he occasionally experienced sensation deficits and weakness in the left hand. *Id*. He further diagnosed a cracked bone in the left shoulder, but Jordan denied having a

cracked bone. *Id*. In addition, Jordan was able to lift his hands up and arms above his head without difficulty. *Id*. He had a normal gait and station, and did not need a cane for ambulation. *Id*. Torrance concluded that Jordan should be considered "mildly disabled," with a limited ability to sit, stand, lift, carry, walk and exert himself. *Id*.

The record also contains monthly office visits notes from April to August 2009, apparently with Cesar Gonzales, M.D., plus occupational therapy notes. (Tr. 192-204).

On September 3, 2010, Cesar Gonzales, M.D., completed an attorney-supplied medical source statement. (Tr. 168). He indicated on the form that Jordan could stand or sit for 30 minutes at a time and work for two hours per day. *Id*. He could frequently lift ten pounds, but never bend or manipulate his hands. *Id*. He could occasionally stoop and balance and frequently lift his arms above shoulder level. *Id*. He also needed to frequently elevate his legs during an eight hour workday. *Id*. Gonzales opined that Jordan's pain was moderate to severe. *Id*. He further commented that Jordan needed to be evaluated thoroughly for disability and that he deserved to be considered. *Id*.

Plaintiff contends that the Appeals Council committed reversible error when it failed to address Dr. Gonzales' September 2010 statement that plaintiff submitted in the first instance to the review board. However, evidence submitted by a claimant to the Appeals Council does not per se require remand to the Commissioner simply because the Appeals Council failed to discuss the evidence in its decision. *See Higginbotham v. Barnhart* 405 F.3d 332 (5th Cir. 2005) (*Higginbotham I*); *Higginbotham v. Barnhart*, 163 Fed. Appx. 279, 2006 WL 166284 (5th Cir. 1/10/2006) (unpubl.) ("*Higginbotham II*").[5] Rather, the evidence constitutes part of the instant

---

[5] Despite the presence of new evidence in *Higginbotham*, the panel on subsequent appeal upheld the district court's decision to affirm the Commissioner's denial of benefits. *Higginbotham II*. The panel itself discounted a diagnosis of disability by claimant's treating

record and provides a basis for remand so long as it is new, material and related to the period before the ALJ's decision. *See Higginbotham, supra*; 20 C.F.R. § 404.970(b).[6]

In the case *sub judice*, however, there is no indication that the new evidence reflected plaintiff's condition as of the *hearing date* or at the time of the ALJ's decision, rather than a "later-acquired disability or . . . the subsequent deterioration of the previously non-disabling condition." *Haywood v. Sullivan*, 888 F.2d 1463, 1471-1472 (5th Cir. 1989) (quoting *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir.1985) (internal quotation marks omitted)).[7] Rather, Gonzales completed the evaluation form some seven months after the ALJ's decision, and one year after the hearing date. Gonzales did not indicate that he was assessing plaintiff's condition retroactively to the period at issue herein. Moreover, because degenerative arthritis, by its very name implies a progressive impairment that worsens over time, the court is not persuaded that the new evidence addresses plaintiff's condition during the relevant time, as opposed to a subsequent deterioration. Instead, it is likely that the statement provided support for plaintiff's subsequent application for benefits that resulted in finding of disability for a later period.

---

physician as conclusory and unsupported. *Id*.

[6] *Higginbotham* cited *Perez v. Chater*, and *Wilkins v. Sec'y Dept. of Health Human Servs.* as support for its finding that post-ALJ evidence is to be considered part of the record. *See, Higginbotham*, 405 F.3d at fn. 3 (*citing inter alia, Perez v. Chater*, 77 F.3d 41, 44–45 (2d Cir.1996) and *Wilkins v. Sec'y, Dept. of Health Human Servs.*, 953 F.2d 93, 96 (4th Cir.1991) (*en banc*)). Both *Perez* and *Wilkins* require that the subsequent evidence be new, material and relevant to the pre-ALJ decisional period. *Perez, supra*; *Wilkins, supra* (citing, 20 C.F.R. § 404.970(b)).

[7] Fifth Circuit case law suggests that the relevant period for a disability claim extends until the date of the administrative hearing. *Hammond v. Barnhart*, 132 Fed. Appx. (5th Cir. May 17, 2005) (unpubl.); *Haywood*, 888 F.2d at 1472; *Johnson*, 767 F.2d at 183. Medical evidence that post-dates a hearing may be considered, provided that it addresses the severity of the claimant's pre-hearing condition. *Hammond, supra*.

Returning to consider the remaining evidence for purposes of plaintiff's step three argument, the court observes that paragraph "A" of listing 1.04 requires proof of nerve root compression characterized by 1) neuro-anatomic distribution of pain; 2) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss; and 3) if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

For the first requirement, plaintiff relies on his allegations of back pain. However, the listing contemplates "neuro-anatomic distribution of pain," which likely entails pain radiating to the extremities, not just localized back pain. Reports from Dr. McAlister and the 2008 emergency room visit confirm that plaintiff did not experience radiating symptoms or radiculopathy. *See* discussion, *supra*. However, those examinations pre-date the relevant period. Moreover, plaintiff reported to Dr. Torrance that he experienced pain radiating to his extremities.

Jumping to the third criterion for paragraph "A," the court observes that Drs. McAlister, Torrance, and Gonzales documented positive straight leg testing.

Where plaintiff's argument pointedly falls short, however, is with the multiple requirements for motor loss. Although he emphasizes Torrance's finding that he was unable to heel to toe walk and squat, the regulations provide that "*when appropriate*, [this] may be considered evidence of significant motor loss." 20 C.F.R. Subpart P, App. 1, Section 1.00E(1) (emphasis added). Torrance, however, documented that Jordan had a normal gait, and did not need an assistive device for ambulation. (Tr. 181-182). He further concluded that although Jordan had some slight decreased range of motion, he had no sensory deficits, strength loss, or weakness in the bilateral upper or lower extremities. *Id.*[8]

---

[8] Plaintiff contends that a 1+ DTR evidences reflex loss. (Pl. Brief, pg. 6). However, a "1+" finding indicates a slight but definitely present response, which may or may not be normal. CLINICAL METHODS: THE HISTORY, PHYSICAL, AND LABORATORY EXAMINATION (Walker HK,

Plaintiff alternatively contends that even he does not meet all of the requirements for listing 1.04, his functional limitations medically equal listing 1.04. Under the regulations, the Commissioner will find medical equivalence despite a claimant's failure to exhibit all of the findings for a particular listing, so long as the claimant has other findings related to the impairment that are of equal medical significance to the required criteria. 20 C.F.R. § 404.1526(b). The regulations further emphasize, however, that "[r]egardless of the cause(s) of a musculoskeletal impairment, functional loss for purposes of these listings is defined as the inability to ambulate effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment . . ." 20 C.F.R. Subpart P, App. 1, Section 1.00B(2)(a).

In this case, although Jordan experienced some difficulty with walking long distances, it is manifest that he was able to ambulate outside the home to complete activities of daily living, and did not need an assistive device. *See* 20 C.F.R. Subpart P, App. 1, Section 1.00B(2)(b)(1). Also, for the period at issue, there is no creditable evidence of an inability to perform fine and gross movements effectively. *See* 20 C.F.R. Subpart P, App. 1, Section 1.00B(2)(c).

Finally, while a claimant's residual functional capacity to engage in substantial gainful activity is not dispositive of the step three inquiry, *see* 20 C.F.R. Subpart P, App. 1, Section 1.00H(4), the listings nonetheless represent impairments that the Commissioner deems severe enough to prevent an individual from performing any gainful activity, regardless of the

---

Hall WD, Hurst JW, editors) (3rd edition 1990), http://www.ncbi.nlm.nih.gov/books/NBK396/ Whether a 1 + response is normal depends on the patient's reflex history, other reflexes, and an analysis of associated findings such as muscle tone, muscle strength, or other evidence of disease. *Id*. Here, Jordan's reflexes all were 1+, and there was no evidence of muscle weakness or sensory loss. Moreover, he had a history of normal reflexes. *See* McAlister's findings. Accordingly, these DTR responses do not establish reflex loss.

individual's vocational background. 20 C.F.R. § 404.1525(a). Moreover, an individual whose impairments meet or equal a listed impairment is presumed unable to work. *Sullivan*, 493 U.S. at 532, 110 S.Ct. at 892. Thus, a claimant's ability to work may provide a useful shorthand gauge to measure the severity of a claimant's impairments for purposes of medical equivalence. As explained below, plaintiff retains the residual functional capacity to work.

In sum, plaintiff has not demonstrated that he meets or appears to meet a listing. Thus, he has not established that his rights were substantially affected by the ALJ's failure to explain his step three finding. *Audler, supra*. Any error was harmless. *Id*.

### III. Residual Functional Capacity

The ALJ next determined that Jordan retains the residual functional capacity to perform sedentary work, reduced by the ability to only occasionally climb (but no ladders, ropes, or scaffolds), bend, kneel, stoop, crouch, and crawl. (Tr. 19).[9]

Insofar as plaintiff contends that the ALJ's residual functional capacity assessment is undermined by Dr. Gonzales's September 2010 statement, the court has already found that it is not relevant to the period at issue, and therefore, does not provide a basis to challenge the ALJ's determination. *See* discussion, *supra*.

Plaintiff also challenges the ALJ's evaluation of his credibility. In this case, the ALJ carefully considered plaintiff's complaints of pain and found that his impairments could

---

[9] Sedentary work entails:
> . . . lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. 404.1567(a).

reasonably cause his alleged symptoms. (Tr. 20). However, he did not credit his allegations regarding the intensity, persistence, and limiting effects of the symptoms to the extent that they were inconsistent with the residual functional capacity assessment. *Id*. The ALJ noted that, upon examination, plaintiff was but "mildly" disabled, and records confirmed that he was capable of at least sedentary work. *Id*.

      Plaintiff argues that Dr. Torrance's statement that he was mildly disabled, evidences significant limitations because Torrance further found Jordan was limited in his ability to sit, stand, lift, carry, walk, and exert himself. Were the record limited to these impressions by Torrance, the court would tend to agree that his assessment remained ambiguous. However, Torrance further documented that plaintiff reported the ability to stand for 20 minutes at a time for a total of two to four hours in an eight hour workday. He also stated that he could walk for 100 yards, sit for 30 minutes. At the hearing, plaintiff admitted that he could lift up to ten pounds. (Tr. 38). He also could stand and walk for up to about 30 minutes and sometimes sit "all right." (Tr. 38-39). Plaintiff further completed disability forms stating that he could clean, do laundry, and iron "mostly all the time." (Tr. 133). Moreover, it took him three to four hours to do these activities. *Id*.

      If anything, the record potentially supports an additional limitation requiring a sit/stand option for plaintiff to adjust positions to accommodate his pain. *See e.g.*, 173. Any error, however, was harmless.[10] At step five, the ALJ propounded an additional hypothetical to the vocational expert that included the need for a sit/stand option. The VE effectively opined that, despite a 50 percent reduction in jobs, there still would be a substantial number of jobs in the

---

[10] *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (procedural perfection in administrative proceedings is not required).

15

national economy. *See* Tr. 42-43, and discussion, *infra*.

In sum, the ALJ partially credited plaintiff's allegations and reduced his residual functional capacity to sedentary work, in accordance with plaintiff's own representations and the medical record. The ALJ's analysis satisfied the requirements of 20 C.F.R. § 404.1529, and his resolution is supported by substantial evidence. *See Undheim v. Barnhart*, 214 Fed. Appx. 448 (5th Cir. Jan. 19, 2007) (unpubl.) (opinion as a whole gave sufficient reasons and documentation for the ALJ's credibility determination); *Cornett v. Astrue*, 261 Fed. Appx. 644 (5th Cir. Jan. 3, 2008) (unpubl.) (ALJ gave some weight to claimant's complaints; thus claimant's arguments that his subjective complaints were not given enough weight is unavailing); *Story v. Astrue*, Docket No. 08-10234 (5th Cir. Sept. 30, 2008) (unpubl.) (ALJ fulfilled obligation to make explicit credibility findings when he considered claimant's allegations and found them inconsistent with the medical evidence).

## IV. Steps Four and Five

The ALJ concluded at step four of the sequential evaluation process that Jordan could not perform his past relevant work. (Tr. 20). Accordingly, he proceeded to step five. At this step, the ALJ determined that plaintiff was a younger individual, with a limited education, and that transferability of skills was immaterial. (Tr. 20-21).

With the assistance of a vocational expert, the ALJ determined that during the relevant period, there were a substantial number of jobs that existed in the national economy that plaintiff still could perform, given his vocational factors and residual functional capacity. (Tr. 21).[11]

---

[11] The vocational expert identified two representative job categories at the sedentary level, including *inter alia*, final assembler, Dictionary of Occupational Titles ("DOT") Code # 713.687-012 and table worker, DOT Code # 739.687-182. (Tr. 21, 42). There are approximately 82,000 such positions in the United States and 850 in Louisiana, before reduction for the need for a sit/stand option. (Tr.42-43). These jobs constitute a significant number of jobs

Plaintiff contends that the ALJ's step five conclusion is flawed because his hypothetical to the vocational expert failed to include additional limitations identified by him and/or his treating physician. However, a hypothetical need only reasonably incorporate the disabilities and limitations recognized by the ALJ. *Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994). Here, the ALJ's hypothetical(s) to the vocational expert faithfully incorporated all of the limitations recognized in his residual functional capacity assessment, and that assessment is supported by substantial evidence. *See* discussion, *supra*.

## **Conclusion**

The ALJ in this case was tasked with determining whether plaintiff was disabled. In so doing, he considered the claimant's testimony, the medical record, and expert opinion evidence. The evidence was not uniform, and according to plaintiff, should have compelled a different result. However, conflicts in the evidence are for the Commissioner to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted). This court may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000).[12] That is

---

in the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

[12] Admittedly, this court has expanded upon some of the reasoning given by the Commissioner for his decision. Generally, courts "only may affirm an agency decision on the basis of the rationale it advanced below." *January v. Astrue*, No. 10-30345, 2010 WL 4386754 (5th Cir. Nov. 5, 2010) (citation omitted). One exception to this rule, however, is harmless error, i.e. absent the alleged error or omission, there is "no realistic possibility" that the ALJ would have reached a different result. *Id*. This exception is applicable here. Further, the Fifth Circuit implicitly has sanctioned the federal courts' practice of assigning independent reasons for discounting newly adduced evidence. *See e.g., Foster, supra; Garth v. Astrue*, 393 Fed. Appx. 196 (5th Cir. Aug. 26, 2010) (unpubl.).

not to say that the ALJ's decision is blemish-free, but procedural perfection in the administrative process is not required, and any errors do not undermine confidence in the decision.

For the foregoing reasons, the undersigned finds that the Commissioner's determination that Jordan was not disabled under the Social Security Act, is supported by substantial evidence and remains free of legal error. Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, in its entirety, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 12th day of January 2012.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE